**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 18-cr-00783-2 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| AHMAD NAZER | ) | |

**MEMORANDUM OPINION AND ORDER**

After pleading guilty to conspiring with his brother to smuggle gun and firearm parts out of the United States, Defendant Ahmad Nazer was sentenced to a six-month term of imprisonment on March 9, 2020. He was also given until May 11, 2020 to self-surrender to the custody of the Bureau of Prisons ("BOP"). Over the ensuing weeks, the COVID-19 pandemic has disrupted the lives of millions of Americans. Like many others, due to school closures, Nazer's daughters have had to finish their school year at home with remote learning. Nazer's wife, however, cannot stay home with the children, as she works in an essential job in the healthcare sector that she cannot perform remotely. According to Nazer, it has fallen to him to care for his daughters and supervise their studies. Consequently, he has filed the instant motion for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i), arguing that going to prison during the present pandemic would cause substantial hardship for his family. For the following reasons, Nazer's motion is denied as to the requested relief. In light of the present circumstances, however, the Court will extend Nazer's surrender date until September 28, 2020.

**BACKGROUND**

On May 14, 2019, Nazer pleaded guilty to one count of conspiracy to knowingly and fraudulently export from the United States gun and firearm parts subject to the United States Munitions List, in violation of 18 U.S.C. § 371. (Dkt. No. 18.) This Court sentenced Nazer to

serve a six-month term of imprisonment on March 9, 2020. (Dkt. No. 32.) While the U.S. Sentencing Guidelines ("Guidelines" or "USSG") provided for a sentence between 37 and 46 months of imprisonment, the Court granted the Government's motion for a downward departure for substantial assistance under USSG § 5K1.1 based on Nazer's cooperation with the investigation of his co-Defendant, Ayman Nazer, who is also his brother. In addition, the Court determined that a further downward variance was warranted due to, among other things, Nazer's relatively minimal role in the offense, family ties and responsibilities (including childcare responsibilities), and lack of a prior criminal history. Without objection from the Government, the Court allowed Nazer to voluntarily surrender to custody and set his surrender date for May 11, 2020.

Two days after the Court sentenced Nazer, the World Health Organization declared the COVID-19 viral disease a pandemic. *See* Bill Chappell, *Coronavirus: COVID-19 Is Now Officially A Pandemic, WHO Says*, NPR (Mar. 11, 2020, 12:30 PM), https://www.npr.org/sections/goatsandsoda/2020/03/11/814474930/coronavirus-covid-19-is-now-officially-a-pandemic-who-says. As of April 30, 2020, the State of Illinois has reported 52,918 confirmed positive cases of COVID-19 and 2,355 deaths. *Coronavirus Disease 2019 (COVID-19)*, Ill. Dep't of Pub. Health, https://dph.illinois.gov/covid19 (last updated Apr. 30, 2020). The Governor of Illinois has responded to the pandemic by issuing a statewide stay-at-home order that was first put into effect on March 21, 2020, and is currently set to remain in effect until May 30, 2020. Jamie Munks et al., *Gov. J.B. Pritzger extends 'modified' Illinois stay-at-home order through May 30*, Chi. Tribune (Apr. 23, 2020, 7:47 PM), https://www.chicagotribune.com/coronavirus/ct-coronavirus-illinois-stay-at-home-extension-20200423-cqp6wzjj5ng7rgrfpg64ijgoua-story.html. In addition, the Governor has closed all

schools in Illinois through the end of the academic year, and since March 17, 2020, students have taken their classes remotely. Jamie Munks et al., *Illinois Gov. J.B. Pritzger shuts down schools for rest of academic year as state reports new single-day high in coronavirus cases*, Chi. Tribune (Apr. 17, 2020, 6:53 PM), https://www.chicagotribune.com/coronavirus/ct-coronavirus-illinois-schools-pritzker-20200417-uxpkcai7ejcyhazlhii3kwuflq-story.html.

      With his motion for a reduction of his sentence, Nazer claims that the fallout from the COVID-19 pandemic has directly impacted his family and that serving his sentence during the pandemic would cause his family significant hardship. Specifically, Nazer points to the fact that his wife works in an essential job as a computer network engineer for AMITA Health, providing network support for medical information systems used in all aspects of AMITA Health's healthcare services. According to Nazer, her job requirements make it difficult for her to work from home and require her to be on call to respond to network emergencies. And given the strain that the pandemic has put on hospitals, Nazer's wife must dedicate even more hours than usual to an already-demanding job. At the same time, Nazer has three school-aged daughters who have been impacted by the shutdown of Illinois schools. Nazer claims that it has fallen to him to stay at home with his daughters and ensure that they are completing their school work. According to Nazer, in his absence, neither he nor his wife have relatives capable of providing the support and supervision that his daughters require. Consequently, Nazer asks that his sentence be reduced to time served and an additional six months added to his two-year term of supervised release, with the first six months to be served on home confinement.

**DISCUSSION**

Once a federal district court imposes its sentence, the sentence may not be modified except in the narrow circumstances set forth in 18 U.S.C. § 3582(c). *United States v. Townsend*, 762 F.3d 641, 645 (7th Cir. 2014). Relevant here, under 18 U.S.C. § 3582(c)(1)(A)(i):

> [T]he court, upon motion of the director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

This section was recently amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), "to allow defendants to petition courts directly for compassionate release the earlier of either fully exhausting" all administrative rights to appeal the BOP's failure to bring a motion for compassionate release on the defendant's behalf or 30 days after the facility warden has received a defendant's request for compassionate release. *United States v. Reyes*, No. 04 CR 970, 2020 WL 1663129, at *1 (N.D. Ill. Apr. 3, 2020). Prior to the First Step Act, a defendant could not bring a motion for compassionate release himself but instead had to rely on the BOP to bring such a motion on his behalf. *United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *1 (S.D.N.Y. Jan. 8, 2020).

Given its recent amendment, many aspects of the law governing motions under § 3582(c)(1)(A) remain unsettled. Nazer's motion, in particular, raises several questions that have no clear answers in precedent from the Seventh Circuit or the U.S. Supreme Court. Among them is whether relief under § 3582(c)(1)(A) is available to a defendant in Nazer's position—that is,

4

whether a defendant may obtain compassionate release where he has been sentenced but has not yet begun to serve his term of imprisonment. While § 3582(c)(1)(A) does not categorically foreclose relief in such circumstances, the language of the statute suggests that relief is unavailable because of the requirement that the defendant first file a request with his facility's warden and then await the earlier of 30 days or the exhaustion of his avenues of appeal of the Bureau of Prison's failure to bring a motion on his behalf. Moreover, the regulations governing the process for requesting the BOP to file a motion for compassionate release contemplate that such a request will be made by an individual who is presently incarcerated, as indicated through the use of the word "inmate" to refer to the person making the request. *See, e.g.*, 28 C.F.R. § 571.61.

On the other hand, there have been instances when a district court has allowed a defendant to seek compassionate release even though the defendant was not in BOP custody. *See United States v. Hernandez*, No. 18 Cr. 834-04 (PAE), 2020 WL 1684062, at *2 (S.D.N.Y. Apr. 2, 2020); *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *1 (E.D. Wash. Mar. 31, 2020). But in those cases, the defendant had already begun serving his or her term of imprisonment but was not presently incarcerated in a BOP facility. *See Hernandez*, 2020 WL 1684062, at *2 (defendant in custody of the United States Marshals at a private facility); *Gonzalez*, 2020 WL 1536155, at *1 (defendant began term of imprisonment in local jail and had not been designated to a BOP facility). Thus, there is reason for the Court to doubt that Nazer may seek compassionate release prior to his incarceration. Nonetheless, because the answer is not entirely clear and the Government does not press denial of Nazer's motion on this ground, the Court will assume for present purposes that relief is available to him if § 3582(c)(1)(A) otherwise has been satisfied.

5

That leads to the question of whether Nazer should be deemed to have exhausted his administrative remedies before filing the present motion. Nazer argues that since he is not currently incarcerated and has not been designated to a BOP facility, he cannot petition the BOP to move for compassionate release on his behalf. He contends that because the administrative procedures for submitting such a request are not available to a non-inmate, he has fully exhausted his available remedies. The Court disagrees with Nazer's contention, as the statute does not simply state that a defendant must exhaust any available remedies. Rather, § 3582(c)(1)(A) requires that the defendant either exhaust his available administrative remedies *or* wait 30 days after serving his request on the warden of his facility before filing his motion.

In the cases noted above involving defendants who were not residing in a BOP facility, the defendants were able to communicate their requests directly to the BOP. In turn, the BOP responded by informing the defendants that it was unable to process a request from an inmate not incarcerated in a BOP facility. Therefore, the district courts in those cases found the BOP's response to be the equivalent of a denial and concluded that the defendant had exhausted their administrative remedies. *See Hernandez*, 2020 WL 1684062, at *2; *Gonzalez*, 2020 WL 1536155, at *1. Here, Nazer claims that his attorney twice reached out to the BOP for guidance in filing Nazer's compassionate release request and never received a response. Even accepting those communications as a request for the BOP to file a motion on Nazer's behalf, the BOP's lack of a response does not equate to a denial. At most, Nazer's counsel's communications initiated the running of the 30-day clock. But Nazer concededly did not wait for the expiration of that 30-day period to file the present motion. (Def.'s Mot. for Reduction of Sentence ¶ 19, Dkt. No. 38.) Thus, even interpreted generously, Nazer has failed to meet the statutory criteria for filing his motion.

Since Nazer failed to exhaust his administrative remedies, the Court must determine whether § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional. If the exhaustion requirement is jurisdictional then it cannot be waived and the Court must dismiss Nazer's motion for lack of subject-matter jurisdiction. *United States v. Haney*, No. 19-cr-541 (JSR), 2020 WL 1821988, at *2 (S.D.N.Y. Apr. 13, 2020). On the other hand, if the exhaustion requirement is a claim-processing rule, it does "not 'govern a court's adjudicatory capacity,' [and] may, in certain cases, be waivable by the parties or by the courts." *Id.* (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). This is another issue where courts have diverged. *Compare Haney*, 2020 WL 1821988, at *3 ("[T]he court concludes that the exhaustion requirement in § 3582(c)(1)(A) is a claim-processing rule that does not deprive this Court of jurisdiction."), *with United States v. Johnson*, No. RDB-14-0441, 2020 WL 1663360, at *4 (D. Md. Apr. 3, 2020) ("Section 3582(c)(1)(A) is jurisdictional in nature and this Court does not have jurisdiction to address requests for reduction of a sentence until there has been an exhaustion of administrative remedies in accordance with the statute.").

While the Seventh Circuit has yet to address whether § 3582(c)(1)(A) is jurisdictional, it has previously held that the statutory criteria in a different subsection, § 3582(c)(2), amounted to a non-jurisdictional claim-processing rule. *United States v. Taylor*, 778 F.3d 667, 671 (7th Cir. 2015). Its conclusion was based on the fact that § 3582 "is not part of a jurisdictional portion of the criminal code" and "subsection (c) [is not] phrased in jurisdictional terms." *Id.* Every district court within this Circuit that has addressed the issue has found *Taylor*'s rationale equally applicable to § 3582(c)(1)(A)'s exhaustion requirement and concluded that it is not jurisdictional. *E.g.*, *United States v. Witter*, No. 18-cr-77-wmc-4, 2020 WL 1974200, at *4 (W.D. Wis. Apr. 24, 2020); *United States v. Cox*, No. 4:18-cr-00017-TWP-VTW, 2020 WL 1923220, at *3 (S.D. Ind.

7

Apr. 21, 2020). This Court agrees with those courts and concludes that § 3582(c)(1)(A)'s exhaustion requirement is a non-jurisdictional claim-processing rule.

However, the Court's conclusion that the exhaustion requirement is non-jurisdictional does not necessarily mean that it can be waived. Again, district courts have split on whether § 3582(c)(1)(A)'s exhaustion requirement, even if non-jurisdictional, is nonetheless mandatory and cannot be waived. *E.g.*, *Haney*, 2020 WL 1821988, at *1 n.1 (detailing the split of authority in the Second Circuit). And even if the exhaustion requirement is subject to waiver, the Court would still have to address whether waiver is appropriate in this case. Nevertheless, the Court deems it unnecessary to wade into the details of the waiver issue because even if it waived the exhaustion requirement for Nazer, it would still deny his motion on the merits.

A sentence reduction under § 3582(c)(1)(A)(i) may only be granted where supported by "extraordinary and compelling reasons." The statute does not define what constitutes "extraordinary and compelling reasons," but instead "directs the Sentencing Commission to promulgate 'the criteria to be applied and a list of specific' extraordinary and compelling examples." *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) (quoting 28 U.S.C. § 994(t)). Those criteria are set forth at USSG § 1B1.13 and the Sentencing Commission has limited "extraordinary and compelling reasons" to the four scenarios set forth in the commentary. *Id.* Of those scenarios, the one most applicable here is "Family Circumstances," specifically "[t]he death or incapacitation of the caregiver of the defendant's . . . minor children." USSG § 1B1.13 cmt. n.1(C)(i). Yet it is a stretch to say that Nazer's wife has been rendered "incapacitated" by her increased work responsibilities due to the COVID-19 pandemic. *See Incapacitate*, Dictionary.com, https://www.dictionary.com/browse/incapacitate (last visited Apr. 30, 2020) ("1 to deprive of ability, qualification, or strength; make incapable or unfit; disable. 2

8

Law. to deprive of the legal power to act in a specified way or ways."). Although the criteria also include a catch-all provision allowing for compassionate release where the BOP Director determines that there are extraordinary compelling reasons other than the Sentencing Commission's specific examples, that provision by its very terms only allows the BOP Director to make the determination. USSG 1B1.13 n.1(D). But because the Sentencing Commission has not revised its criteria in light of the passage of the First Step Act, many district courts have concluded that they are not confined to the specific examples of extraordinary and compelling reasons enumerated in USSG § 1B1.13 in evaluating motions for compassionate release. *E.g.*, *United States v. Redd*, No. 1:97-cr-00006-AJT, 2020 WL 1248493, at *6–8 (E.D. Va. Mar. 16, 2020); *Rodriguez*, 424 F. Supp. 3d at 681–82.

Regardless of how the standard is understood, however, Nazer's circumstances are not so "extraordinary and compelling" as to warrant reduction of his sentence because there is a reasonable alternative available to the Court that fully addresses Nazer's concerns. Because Nazer has not yet begun his term of incarceration, the Court can delay his surrender date until the COVID-19 pandemic has subsided. While the Court is sympathetic to Nazer's concerns about the hardship that his absence will cause his family, he previously raised similar concerns in arguing for a non-custodial sentence at his sentencing hearing. The Court accounted for those concerns, among other things, in imposing a sentence well-below the Guidelines range but nonetheless deemed it appropriate for Nazer to serve a term of imprisonment. Nazer's wife's increased work responsibilities as an essential employee in the healthcare field provide good reason for this Court to accommodate Nazer's request that he be allowed to remain at home and care for his daughters during the height of the COVID-19 pandemic. But the pandemic has not changed the Court's initial judgment that a term of imprisonment is warranted. By extending Nazer's surrender date,

9

the Court can accommodate Nazer's need to be at home with his daughters as his wife responds to the increased demands of her job without disturbing the Court's considered judgment in imposing a term of imprisonment. Moreover, the Government does not oppose an extension. For that reason, the Court extends Nazer's surrender date to September 28, 2020. If the COVID-19 pandemic has not subsided at that time, Nazer may move for another extension or seek other appropriate relief.

## CONCLUSION

For the foregoing reasons, Nazer's motion for reduction of sentence (Dkt. No. 38) is denied without prejudice. However, Nazer will be granted an extension of his surrender date to September 28, 2020.

ENTERED:

Dated:  May 6, 2020  _____

Andrea R. Wood
United States District Judge